IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA

KATHLEEN MARONE                        :        CIVIL ACTION
1932 S. 18th Street
Philadelphia, PA 19145
          Plaintiff,
          v.                           :

WACHOVIA BANK, N.A.,
Successor in Interest to
First Union National Bank,
Successor in Interest to
First Fidelity Bank, NA
123 South Broad Street
7th Floor
Philadelphia, PA 19109
          And
MCCABE, WEISBERG & CONWAY, P.C.
Suite 2080
123 S. Broad Street
Philadelphia, PA 19109             :        NO.
          And
TERRENCE J. MCCABE, ESQUIRE
Suite 2080
123 S. Broad Street
Philadelphia, PA 19109
          And
MARGARET GAIRO, ESQUIRE
Suite 2080
123 S. Broad Street
Philadelphia, PA 19109
          And
EDWARD D. CONWAY, ESQUIRE
Suite 2080
123 S. Broad Street
Philadelphia, PA 19109
          And
BONNIE DAHL, ESQUIRE
Suite 2080
123 S. Broad Street
Philadelphia, PA 19109
          And
SHERIFF JOHN D. GREEN
Land Title Building
100 South Broad Street
5th Floor
Philadelphia, PA 19110             :

## COMPLAINT

## A.   PRELIMINARY STATEMENT

This suit is brought by a recently widowed, disabled,
low income individual whose home of thirty (30) years was
wrongfully sold at Sheriff Sale based on a "sham default".
This action is brought because of various egregious
violations by the defendants of numerous state and federal
laws, more specifically stated below.

**B.    PARTIES**

1.    Plaintiff, Kathleen Marone, is an individual citizen of the City of Philadelphia, Commonwealth of Pennsylvania with a personal residence address of 1932 S. 18th Street, Philadelphia, Pennsylvania.  Plaintiff is a natural person and a low income person for all purposes of debt statutes herein.

2.    Defendant, Wachovia Bank, N.A. ("Wachovia"), Successor in Interest to First Union National Bank, Successor in Interest to First Fidelity Bank, NA, is a national bank organized and doing business under the laws of the United States of America.  Wachovia is authorized to transact business in the  Commonwealth of Pennsylvania with a business address at 123 South Broad Street, 7th Floor, Philadelphia, Pennsylvania.  The actions of Wachovia complained of herein were carried out by its agents, servants, workers or employees acting within the scope of their employment and in furtherance of Wachovia's business or by their attorneys identified herein.  Wachovia is a creditor for purposes of debt statutes herein.

3.    Defendant, McCabe, Weisberg & Conway, P.C. ("The McCabe Firm"), is a professional corporation organized pursuant to the laws of the Commonwealth of Pennsylvania with a business address of Suite 2080, 123 South Broad Street, Philadelphia, Pennsylvania.  The McCabe Firm provides legal services.  The McCabe Firm and its shareholders and associates named herein, shall be referred to collectively as the McCabe Firm Defendants.  The McCabe Firm Defendants are debt collectors for purposes of debt statutes herein.  The actions of the McCabe Firm were

carried out by the shareholders and associates named herein,
as the agents, servants, workers or employees acting within
the scope of their employment and in furtherance of the
McCabe Firm's business.

4.   Defendant, Terrence J. McCabe, Esquire, is an
attorney licensed to practice law in the Commonwealth of
Pennsylvania with a business address of 123 South Broad
Street, Suite 2080, Philadelphia, Pennsylvania.  Mr. McCabe
worked on the mortgage foreclosure action which is the
subject of this action ("the mortgage foreclosure action")
and signed various court documents in connection therewith
and is a shareholder of the McCabe Firm.

5.   Defendant, Margaret Gairo, Esquire, is an attorney
licensed to practice law in the Commonwealth of Pennsylvania
with a business address of 123 South Broad Street, Suite
2080, Philadelphia, Pennsylvania.   Ms. Gairo worked on
matters related to the mortgage foreclosure action and
issued a letter on behalf of Defendant Wachovia to the
Plaintiff.  Upon information and belief, Ms. Gairo is, or,
at all times relevant herein, was an associate in the McCabe
Firm.

6.   Defendant, Edward Conway, Esquire, is an attorney
licensed to practice law in the Commonwealth of Pennsylvania
with a business address of 123 South Broad Street, Suite
2080, Philadelphia, Pennsylvania.   Mr. Conway worked on the
mortgage foreclosure action and signed various court
documents in connection therewith.   Mr. Conway is a
shareholder of the McCabe Firm.

7.   Defendant, Bonnie Dahl, Esquire, is an attorney
licensed to practice law in the Commonwealth of Pennsylvania

with a business address of 123 South Broad Street, Suite
2080, Philadelphia, PA.   Ms. Dahl worked on the mortgage
foreclosure action and signed various court documents in
connection therewith.   Upon information and belief, Ms.
Dahl is or, at all times relevant herein, was an associate
in the McCabe Firm.

8.   Defendant, Sheriff John D. Green is an elected
official for the City and County of Philadelphia charged
with the responsibility of administering the "Sheriff sales"
for properties located within the City of Philadelphia.   At
all times material hereto, Sheriff Green acted by and
through the employees of the Sheriff's Office who were
acting within the scope of their employment on his behalf.
Sheriff John Green has a business address at the Land Title
Building, 100 South Broad Street, 5th Floor, Philadelphia,
Pennsylvania.

**C.   JURISDICTION AND VENUE**

9.   Jurisdiction exists pursuant to 28 U.S.C. §1331;
42 U.S.C. §1983, 15 U.S.C. §1601 and 15 U.S.C. §1681, et seq
because the matters at issue herein raise federal questions.
Supplemental jurisdiction exists for the state law claims
pursuant to 28 U.S.C. §1367.

10.   Venue is proper in this district pursuant to 28
U.S.C. §1391, as all the Defendants are located in this
District and a substantial portion of the events which gave
rise to the claims occurred in this District.

**D.    FACTUAL AVERMENTS**

11.  On or about December 20, 2002, Defendant Wachovia, by and through its counsel, the McCabe Firm Defendants, filed a Mortgage Foreclosure Complaint against Plaintiff and service of the Complaint was effected upon Plaintiff on or about December 30, 2002.

12.   Defendants, Wachovia and the McCabe Firm Defendants, attached to the Complaint what are referred to as the "Act 6", (41 P.S. §101, et seq.) and "Act 91", (35 P.S. §1680 et seq), combined notices, ("the notices") which are to be served upon homeowners prior to the initiation of a mortgage foreclosure action.  Defendant, Wachovia, represented that Plaintiff was in default on her loan in the notices by not making payments for April, May and June 2002. This was an intentional and false representation by Wachovia.  Plaintiff had paid April and May.  June payment was not yet due as of the date of the notices.  Further, the Foreclosure Complaint sets forth different time periods of alleged default which were also false.

13.  Despite being dated July 5, 2002, the notices were never served on Plaintiff at any point in time.  The two statutes are explicit in their service requirements and these requirements are jurisdictional in nature.  The Defendants attached a blank certified mail receipt to the foreclosure Complaint to try to make it appear that Wachovia had actually served the Act 6 and Act 91 notices when in

fact it had not. (Act 6 requires the notice to be sent by
certified mail; Act 91 requires there to be proof of a
certificate of mailing; the Defendants complied with neither
of these requirements).  To date, the Defendants have not
produced credible evidence of "service" receipts for the
Complaint.

14.  Subsequently, after service of the Complaint upon
her, Plaintiff was in communication with Defendants to
advise that she believed she was not in default; that she
had never received any preforeclosure notices and that
Defendant Wachovia had previously garnished funds in
Plaintiff's checking account in August of 2002 which paid
any arrearage.  Plaintiff was promised that, if she signed a
Forebearance Agreement, defendants would take steps to
properly credit her account, end the suit and reimburse her
any overpayments she may have made.  Wachovia demanded and
accepted substantial overpayments from Plaintiff which
overpayments, according to Wachovia's own payment history,
established that Plaintiff was not in default.  Despite the
fact that they had illegally sued Plaintiff, and were
accepting overpayments of the mortgage debt, Wachovia and
the McCabe Firm Defendants kept the foreclosure case active
on the docket in the hope that they would still be able to
proceed with a foreclosure even though Plaintiff was not in
default at that time.

15.  Subsequently, in late 2003, Plaintiff, because of
Defendants' refusal to account for overpayments being made

by her, was forced to cease making mortgage payments.
Rather than serve a proper Complaint with proper notices
under Act 6 and Act 91, the Defendants used the old invalid
Complaint (with no service of notices) and proceeded to
execution proceedings.

16.  On or about January 13, 2004, Defendants filed a
Praecipe for Entry of Judgment by Default with the Court.
The Praecipe for Entry of Judgment by Default contained
amounts which were false and inflated to defendants'
benefit.  No Notice of Intention to Enter a Default Judgment
was ever properly served on Plaintiff, despite the legal
requirement to do so.

17.  On or about January 13, 2004, Defendants also
filed a Praecipe for Writ of Execution.   The Writ of
Execution contained amounts which were false and inflated to
defendants' benefit.  This, of course, is the beginning of
the Sheriff's Sale process to sell Plaintiff's house.

18.  In April of 2004, with the mortgage foreclosure
action and Writ of Execution still pending, Wachovia
accepted a $5,000.00 payment by Plaintiff, but, in a
fraudulent and deceptive fashion, improperly applied the
payment to attorney fees for work allegedly performed in
connection with the illegal mortgage foreclosure action and,
even if in a legal and proper foreclosure action said fees,
would not be owed in this amount until a sale had been
completed, so that Plaintiff would still be considered in
default by the Defendants.  Because she made this payment,
Plaintiff was, in fact, not in default.

19.  Plaintiff's husband, Nicholas Marone, a co-owner
and co-mortgagor became ill and comatose in January 2004 and
died on May 6, 2004, both of which events defendants were
informed of in a timely fashion.

20.  Nevertheless, on or about June 10, 2004, Defendant
Gairo sent a letter to Plaintiff advising Plaintiff that a
July 6, 2004 Sheriff Sale would be conducted with respect to
her property.

21.  After receipt of this letter, Plaintiff contacted
the McCabe Firm Defendants and was assured that given the
recent death of her husband, and the communication by
Plaintiff that life insurance had been purchased on the
loan, no Sheriff Sale would proceed on July 6, 2004.

22.  However, Wachovia and the McCabe Firm Defendants
intentionally misrepresented the situation and did, in fact,
cause Plaintiff's Property to be sold at Sheriff's Sale on
July 6, 2004 to an individual named Seng Voong.  The
property was sold despite the fact that Nicholas Marone had
died only weeks earlier and Plaintiff paid to Defendants,
according to defendants' own payment history, sums totaling
$9,905.50 from April 2002 to April 2004.  Plaintiff's
monthly mortgage payment of $271.41 for that 25 month period
would be the sum of $6,785.25.  Plaintiff never received
proper credit for these payments despite paying these funds
directly to the McCabe Firm Defendants who, in turn, paid
them to defendant, Wachovia.  These funds were never
properly credited in the foreclosure suit and the amount of

the default judgment remained inflated to defendants'
benefit despite their obvious knowledge of substantial
payments.  Not only did no default exist when defendants
sold plaintiff's home, she had substantially overpaid the
mortgage loan.

23.  At the same time, Defendant Wachovia had also
retained a separate law firm, Linebarger Goggan Blair &
Sampson LLP to collect property taxes allegedly due from
Plaintiff.  This firm sent a letter dated August 10, 2004 to
Plaintiff's late husband seeking the payment of these taxes
even though the property had already been sold at Sheriff's
Sale.  This letter identified plaintiff's late husband as
the owner of the subject premises and further misled
plaintiff into believing that defendants, Wachovia and
McCabe Firm, had canceled the Sheriff's Sale as they had
promised.

24.  Seng Voong initiated an ejectment action and
obtained a judgment.

25.  On or about February 9, 2005, Seng Voong, acting
through his counsel (and defendant, Sheriff Green), served a
Writ of Possession to obtain the eviction of Plaintiff from
the premises.  The eviction date was scheduled for March 10,
2005.

26.  Plaintiff, upon learning of the eviction
scheduled for March 10, 2005, filed a Petition to Open or
Strike the Judgments.  Subsequent investigation revealed
that prior to the Sheriff's Sale, Defendants did not serve
the proper Notice of Sheriff Sale pursuant to Rule 3129 of

the Pennsylvania Rules of Civil Procedure.  This Rule of
Civil Procedure requires that a Notice of Sheriff's Sale be
served upon a defendant in a mortgage foreclosure action and
that proof of service be filed with the Prothonotary. The
Rule also requires that an Affidavit be submitted with the
Notice to the Sheriff's Office 30 days in advance of the
scheduled Sheriff's Sale.

27.    Instead of complying with the Rule 3129
requirements, Defendants intentionally fabricated documents
to make it appear that they complied.  Attached to
Wachovia's Answer to the Petition to Open or Strike the
Judgment are what purport to be a legitimate Notice and
Affidavit for both Plaintiff and her late husband.  These
are fabricated documents fraudulently created at the time of
the filing of the Answer.  A review of the website for the
Sheriff's Office reveals that the Affidavit and Notice
submitted to the Sheriff's Office was for Plaintiff's
husband only.   No notice and Affidavit were ever filed with
the Sheriff's Office with respect to Plaintiff.  Moreover,
the Notice and Affidavit filed with the Sheriff's Office for
Plaintiff's husband (as reflected on the website of the
Sheriff) has a different docket year number crossed out as
compared to the one attached to the Answer, and pagination
is different.  Obviously, such false documents cannot
constitute proper compliance with Rule 3129.

28.    On or about April 28, 2005, The Honorable Joseph
Dych of the Court of Common Pleas of Philadelphia County,
Pennsylvania, struck the judgments of foreclosure and

ejectment and ordered that the property be transferred back to Plaintiff.  Judge Dych believed the conduct of the Wachovia and McCabe Firm Defendants, to be so grossly illegal in failing to comply with the legal requirements of Act 6, Act 91 and Rule 3129, that in his opinion (attached hereto as Exhibit "A"), he stated that "If Wachovia wishes to sheriff the disabled widow Marone, who repeatedly made payments and tried to negotiate from her home of thirty (30) years, let them do it by the book."

29.  On or about May 9, 2005, the Wachovia and McCabe Firm Defendants, without any factual or legal basis to do so, filed a Motion for Reconsideration of the Court's Order. On or about May 24, 2005, Judge Dych denied that Motion.

30.  Thereafter, on or about May 27, 2005, Wachovia and the McCabe Firm Defendants, without any factual or legal basis to do so, filed a Notice of Appeal of Judge Dych's decision.

31.  Subsequently, defendant Dahl also violated pertinent ethical canons and consumer protection laws. Repeatedly, during the appeal process, defendant Dahl contacted Plaintiff directly even though she knew Plaintiff was represented by counsel.  On four separate occasions, to wit, May 24, 2005; May 25, 2005; May 27, 2005 and June 9, 2005 the defendant Dahl communicated directly with Plaintiff in an effort to intimidate and harass her, to wit: when she served her with two different Notices of Appeal, a Praecipe to Withdraw one of the Notices of Appeal and Wachovia's Concise Statement of Matters Complained of On Appeal.  These

communications occurred despite repeated requests from Plaintiff's counsel that they not occur and despite the fact that they are violations of law and Rules of Professional Conduct.

32.   Ultimately, on or about September 13, 2005, Wachovia and McCabe Firm Defendants withdrew the appeal.

33.   Notwithstanding the fact that the judgments had been stricken, the Sheriff Sale set aside, the Appeal withdrawn and the Foreclosure lawsuit discontinued, Wachovia and McCabe Firm Defendants, by letter dated September 15, 2005, charged to Plaintiff illegal attorneys fees, costs and interest.   These illegal charges totaled the sum of $8,736.83.

34.   On or about December 21, 2005, Defendant Voong transferred the property back to Plaintiff as had been ordered by Judge Dych and Wachovia complied with the Order in that respect.

35.   More recently as part of the investigation of what had transpired, Plaintiff sought the production of public records from the Sheriff's Office regarding the Sheriff's Sale of the property.   The Sheriff has not responded.   Rather, the Sheriff contacted the McCabe Firm Defendants to advise them of the request.

36.   Finally, Defendant Wachovia illegally reported this mortgage debt allegedly owing to it by Plaintiff to credit bureaus on two different occasions and has taken action to cause the credit bureaus to list Plaintiff's current address as "Foreclosure, PA".   Defendant Wachovia

reported a completed foreclosure in an inflated amount, to wit: in January 2004, in the amount of $25,454.00 and, as recently as January 26, 2006, reported an additional derogatory payment history and an accelerated and inflated balance owed on the mortgage loan.  That amount, $17,904.00, was the inflated amount claimed as owed on the mortgage loan in the McCabe's Firm's Defendants' September 15, 2005 letter which defendants have subsequently adjusted pursuant to Wachovia's payment history corrected as acknowledged by Wachovia and the McCabe Firm Defendants.

37.  As a direct result of the foregoing, Plaintiff has been forced to spend an inordinate amount of time in the mortgage foreclosure process trying to undo what the Defendants have created; Plaintiff has been deprived of the use and ownership rights including title to her property; has experienced severe emotional distress, including but not limited to the following:

    (A)  Suicidal Thoughts
    (B)  Nausea and Vomiting
    (C)  Insomnia
    (D)  Boil Eruptions
    (E)  Paranoia
    (F)  Agitation
    (G)  Swelling and Inflamation of Parts of Her Body
    (H)  Embarrassment and Humiliation
    (I)  Fear of Bodily Harm
    (J)  Physical and Mental Pain and Anguish.

Plaintiff has also been forced to retain counsel and incur litigation costs as well.

COUNT I:        VIOLATION OF 42 PA.C.S.A. §8351 (AGAINST ALL DEFENDANTS OTHER THAN THE SHERIFF)

38. Plaintiff hereby incorporates the preceding averments as though set forth herein.

39. Pennsylvania law prohibits one from initiating or continuing civil proceedings without probable cause and/or for a purpose other than securing an adjudication of a claim.

40. The Defendants have initiated and continued a civil proceeding against Plaintiff without probable cause and for the improper purpose of receiving proceeds from a foreclosure when the facts and law did not support such foreclosure.

41. Specifically, there was no probable cause for the filing of the initial Complaint, no probable cause for the entry of judgment and no probable cause for moving forward with a Sheriff's Sale of the property.  There was also no probable cause for contesting the Petition to Open or Strike Default Judgment, filing a Motion for Reconsideration and filing an Appeal.

42. As a direct result of the foregoing, Plaintiff has been forced to spend an inordinate amount of time in the mortgage foreclosure process trying to undo what the Defendants have created;  Plaintiff has been deprived of the use and ownership rights including title to her property; has experienced severe emotional distress, including but not limited to the following:

-14-

(A)  Suicidal Thoughts
(B)  Nausea and Vomiting
(C)  Insomnia
(D)  Boil Eruptions
(E)  Paranoia
(F)  Agitation
(G)  Swelling and Inflamation of Parts of Her Body
(H)  Embarrassment and Humiliation
(I)  Fear of Bodily Harm
(J)  Physical and Mental Pain and Anguish

and has been forced to retain counsel and incur litigation costs as well.

WHEREFORE, Plaintiff respectfully requests that the Court award her compensatory damages, punitive damages, reimbursement of counsel fees and litigation costs and such other relief as the Court deems appropriate.

COUNT II:      VIOLATION OF THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (AGAINST ALL DEFENDANTS OTHER THAN THE SHERIFF)

43.  Plaintiff hereby incorporates the preceding averments as though set forth herein.

44.  Pursuant to 73 Pa. C.S.A. §201-1 et seq, Pennsylvania has prohibited unfair and deceptive trade practices.

45.  Such practices may include any fraudulent conduct which creates a likelihood of confusion or of misunderstanding.

46.  The Defendants have engaged in the following fraudulent conduct: the filing of a mortgage foreclosure complaint without serving the proper notices first and based on "sham defaults"; the filing of a default judgment when notice of intention to enter default judgment had not been properly served; the initiation of the Sheriff's sale

process without serving the proper notice, and instead
fabricating documents, the opposition of Plaintiff's
Petition to Open or Strike, the filing of a Motion for
Reconsideration, the filing of an Appeal and the improper
application of payments to the account of Plaintiff.

47.   As a direct result of the foregoing, Plaintiff has
been forced to spend an inordinate amount of time in the
mortgage foreclosure process trying to undo what the
Defendants have created;  Plaintiff has been deprived of the
use and ownership rights including title to her property;
and has been forced to retain counsel and incur litigation
costs as well.

WHEREFORE, Plaintiff respectfully requests that the
Court award her statutory damages, compensatory damages,
treble damages, reimbursement of counsel fees and litigation
costs and such other relief as the Court deems appropriate.

COUNT III:   <u>COMMON LAW FRAUD (AGAINST ALL DEFENDANTS OTHER
THAN THE SHERIFF)</u>

48.   Plaintiff hereby incorporates the preceding
averments as though set forth herein.

49.   The Defendants made certain representations with
knowledge of their falsity to obtain the completion of the
Sheriff Sale process.

50.   Those misrepresentations included, but are not
limited to, the following:

(A)   The misrepresentations that Plaintiff was in
      default.

(B)   The misrepresentations that the fact that
      Plaintiff never received any Act 6 and/or Act 91
      notices prior to their attachment to the Complaint
      (or at any time) was of no consequence or benefit
      to her and had no effect on the mortgage
      foreclosure suit.

(C)   The misrepresentations to Plaintiff of attaching
      blank post office receipts as proof of service
      that Act 6 and Act 91 notices had been properly
      prepared and properly served.

(D)   The misrepresentations that if Plaintiff signed a
      Forebearance Agreement the defendants would
      investigate and properly credit payments made by
      Plaintiff, that the mortgage foreclosure suit
      would terminate and that Plaintiff would be
      refunded overpayments.

(E)   The misrepresentations that if Plaintiff paid the
      inflated, usurious and illegal charges, the
      mortgage foreclosure suit would be terminated and
      she would be refunded overpayments.

(F)   The misrepresentations to the Plaintiff and the
      Court of Common Pleas of Philadelphia County that
      the amounts as contained in the foreclosure
      pleadings were correct when they were false,
      misleading and inflated to defendants' benefit.

(G)   The misrepresentations to the Plaintiff that
      defendants were legally foreclosing on Plaintiff's
      home.

(H)   The misrepresentations that since Plaintiff had
      paid the sum of $5,000.00 to defendants, which
      substantially overpaid the mortgage balance, the
      Sheriff Sale would be canceled.

(I)   The misrepresentations that since Plaintiff's
      husband had recently died and Plaintiff had
      requested information on life insurance to pay the
      mortgage balance, the Sheriff Sale would be
      canceled.

(J)   The misrepresentations that Plaintiff still owned
      the home and that any Sheriff Sale that may have
      taken place had been canceled.

    51.   These misrepresentations were made with the intent
to deceive.

-17-

52.   Plaintiff justifiably relied on these misrepresentations by defendants.

53.   As a direct result of the foregoing, Plaintiff has been forced to spend an inordinate amount of time in the mortgage foreclosure process trying to undo what the Defendants have created;  Plaintiff has been deprived of the use and ownership rights including title to her property; has experienced severe emotional distress, including but not limited to the following:

(A)   Suicidal Thoughts
(B)   Nausea and Vomiting
(C)   Insomnia
(D)   Boil Eruptions
(E)   Paranoia
(F)   Agitation
(G)   Swelling and Inflamation of Parts of Her Body
(H)   Embarrassment and Humiliation
(I)   Fear of Bodily Harm
(J)   Physical and Mental Pain and Anguish

and has been forced to retain counsel and incur litigation costs as well.

WHEREFORE, Plaintiff respectfully requests that the Court award her compensatory damages, punitive damages, reimbursement of counsel fees and litigation costs and such other relief as the Court deems appropriate.

COUNT IV: <u>VIOLATION OF THE PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT (AGAINST ALL DEFENDANTS OTHER THAN THE SHERIFF)</u>

54.   Plaintiff hereby incorporates the preceding averments as though set forth herein.

55.   Pennsylvania law prohibits unfair or deceptive debt collection activities.  73 P.S. §2270.4.

-18-

56.  Specifically, when attempting to collect a debt one may not utilize false and misleading statements; nor may one communicate with someone known to be represented by counsel; nor may one mischaracterize the amount of a debt. 73 P.S. §2270.4.

57.  The Defendants have violated the law by doing all of the foregoing referenced in paragraphs above, including representing to the Court in the Complaint that Plaintiff was in default, and representing that the various mortgage foreclosure notices had been served on Plaintiff when they had not, contesting the Petition to Open or Strike Default Judgment, contacting plaintiff when they knew she was represented by counsel and improperly reporting alleged debts to credit bureaus.

58.  The Defendants have further violated the law by misapplying payments made by Plaintiff in such a fashion so as to compensate themselves with attorney fees for an illegal foreclosure action and thereby increase the debt for Plaintiff.

59.  As a direct result of the foregoing, Plaintiff has been forced to spend an inordinate amount of time in the mortgage foreclosure process trying to undo what the Defendants have created; Plaintiff has been deprived of the use and ownership rights including title to her property; and has been forced to retain counsel and incur litigation costs as well.

WHEREFORE, Plaintiff respectfully requests that the Court award her statutory damages, compensatory damages,

-19-

punitive damages, reimbursement of counsel fees and litigation costs and such other relief as the Court deems appropriate.

COUNT V:   SECTION 1983:  VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS (AGAINST ALL DEFENDANTS OTHER THAN THE SHERIFF)

60.   Plaintiff hereby incorporates the preceding averments as though set forth herein.

61.   Defendants invoked state power when they utilized the Sheriff's sale process.

62.   As such, Defendants became state actors for purposes of Section 1983 law.

63.   The aforesaid actions of the Defendants in filing a Complaint when there was not a default; in falsely representing that mortgage foreclosure notices had been served when they had not; in filing a default judgment when notice of intention to enter default judgment had not been properly served; in initiating the Sheriff's sale process when proper notice had not been served and in fact subsequently fabricating such notice, all constitute denials of due process to Plaintiff.

64.   As a direct result of the foregoing, Plaintiff has been forced to spend an inordinate amount of time in the mortgage foreclosure process trying to undo what the Defendants have created; Plaintiff has been deprived of the use and ownership rights including title to her property; has experienced severe emotional distress, including but not limited to the following:

(A)   Suicidal Thoughts
(B)   Nausea and Vomiting
(C)   Insomnia
(D)   Boil Eruptions

(E)  Paranoia
(F)  Agitation
(G)  Swelling and Inflamation of Parts of Her Body
(H)  Embarrassment and Humiliation
(I)  Fear of Bodily Harm
(J)  Physical and Mental Pain and Anguish

and has been forced to retain counsel and incur litigation
costs as well.

WHEREFORE, Plaintiff respectfully requests that the
Court award her compensatory damages, punitive damages,
reimbursement of counsel fees and litigation costs and such
other relief as the Court deems appropriate.

COUNT VI: <u>VIOLATION OF PENNSYLVANIA RULE OF CIVIL
          PROCEDURE 1023.1 (AGAINST THE MCCABE FIRM
          AND DEFENDANTS MCCABE, CONROY AND DAHL)</u>

65.  Plaintiff hereby incorporates the preceding
averments as though set forth herein.

66.  Pennsylvania Rule of Civil Procedure 1023.1
requires that attorneys certify by their signature that a
document filed with the Court is not being filed for an
improper purpose and that factual support exists for the
filing of the document.

67.  In this matter, the said defendant attorneys and
law firm violated this procedural rule because no factual
basis existed to file a mortgage foreclosure complaint, or
to file a default judgment or to initiate a Sheriff's sale
of the pertinent property or to contest the Petition to Open
or Strike Default Judgment or to file a Motion for
Reconsideration or to file an Appeal.  Further, said
defendants filed false documents with the Court.

68.  As a direct result of the foregoing, Plaintiff has
been forced to spend an inordinate amount of time in the

mortgage foreclosure process trying to undo what the
Defendants have created; Plaintiff has been deprived of the
use and ownership rights including title to her property;
has experienced severe emotional distress, including but not
limited to the following:

   (A)  Suicidal Thoughts
   (B)  Nausea and Vomiting
   (C)  Insomnia
   (D)  Boil Eruptions
   (E)  Paranoia
   (F)  Agitation
   (G)  Swelling and Inflamation of Parts of Her Body
   (H)  Embarrassment and Humiliation
   (I)  Fear of Bodily Harm
   (J)  Physical and Mental Pain and Anguish

and has been forced to retain counsel and incur litigation
costs as well.

     WHEREFORE, Plaintiff respectfully requests that the
Court award her compensatory damages, punitive damages,
reimbursement of counsel fees and litigation costs and such
other relief as the Court deems appropriate.

COUNT VII:    <u>VIOLATION OF THE FAIR DEBT COLLECTION
              PRACTICES ACT (AGAINST ALL DEFENDANTS OTHER
              THAN THE SHERIFF)</u>

     69.  Plaintiff hereby incorporates the preceding
averments as though set forth herein.

     70.   The federal Fair Debt Collection Practices Act,
15 U.S.C. §1601 prohibits the use of false and misleading
statements in connection with the collection of a debt.

     71.  The Defendants have made false and misleading
statements by filing a Complaint without a basis to do so,
by filing for a default judgment when notice of intention to
enter default judgment had not been properly served, by
initiating the Sheriff Sale process without having served

notice, by contesting the Petition to Open or Strike Default Judgment, by filing a Motion for Reconsideration, by filing an Appeal. and by filing false documents with the Court.

72.  The Defendants have also violated the Fair Debt Collection Practices Act by misapplying payments made by Plaintiff toward attorney fees so as to attempt to increase the debt allegedly owed by Plaintiff, by contacting Plaintiff when they knew she was presented by counsel, and by notifying the credit bureaus that Plaintiff owed funds to Wachovia in amounts which she did not owe and notified credit bureaus of inflated amounts.

73.  As a direct result of the foregoing, Plaintiff has been forced to spend an inordinate amount of time in the mortgage foreclosure process trying to undo what the Defendants have created; Plaintiff has been deprived of the use and ownership rights including title to her property; has experienced severe emotional distress, including but not limited to the following:

(A)  Suicidal Thoughts
(B)  Nausea and Vomiting
(C)  Insomnia
(D)  Boil Eruptions
(E)  Paranoia
(F)  Agitation
(G)  Swelling and Inflamation of Parts of Her Body
(H)  Embarrassment and Humiliation
(I)  Fear of Bodily Harm
(J)  Physical and Mental Pain and Anguish

and has been forced to retain counsel and incur litigation costs as well.

WHEREFORE, Plaintiff respectfully requests that the Court award her statutory damages, compensatory damages, punitive damages, reimbursement of counsel fees and litigation costs and such other relief as the Court deems appropriate.

COUNT VIII:   <u>VIOLATIONS OF PENNSYLVANIA LOAN INTEREST AND</u>
              <u>PROTECTION LAW "ACT 6" AND HOMEOWNERS</u>
              <u>EMERGENCY MORTGAGE ASSISTANCE PROGRAM "ACT 91"</u>
              <u>(AGAINST ALL DEFENDANTS OTHER THAN THE SHERIFF)</u>

74.   Plaintiff hereby incorporates the preceding averments as though set forth herein.

75.   Act 6 and Act 91 both provide prerequisites to mortgage foreclosure including, but not limited to, notices of intention to foreclose and specific methods of service. The prerequisites as contained in statutes were enacted by our legislature to protect vulnerable consumers and, with regard to Act 91, are for the protection of lower income residents of Pennsylvania.

76.   Notices under Act 6 and Act 91 were never properly prepared; were never sent to Plaintiff; were never received by Plaintiff; and could not have been appropriately issued since no default of the mortgage loan existed at the time defendants claimed that the notices were sent.

77.   The Pennsylvania Loan Interest and Protection Law provides remedies to those individuals who are charged amounts in excess of what Pennsylvania statutes permit.

78.   The Defendants charged Plaintiff amounts for attorney fees and costs which were not legitimate charges and which therefore were in excess of permissible charges under the Pennsylvania Loan Interest and Protection law.

79.   The amount of excess charges is the sum of $2,655.89 which defendants deducted and applied to illegal charges from a $5,000.00 payment made by Plaintiff in April of 2004 and the sum of $8,736.83 which defendants charged to Plaintiff's outstanding mortgage loan on or about September 15, 2005.

80.   The Pennsylvania Loan Interest and Protection Law permits the trebling of such charges.

-24-

81.  As a direct result of the foregoing, Plaintiff had been charged in excess of appropriate charges for which the base damages of $2,655.89 were collected and charged in April 2004 and $8,736.83 in illegal charges which were charged in September 2005.

WHEREFORE, Plaintiff respectfully requests that the Court award her compensatory damages, treble damages, reimbursement of counsel fees and litigation costs and such other relief as the Court deems appropriate.

COUNT IX:   <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
            <u>(AGAINST ALL DEFENDANTS OTHER THAN THE SHERIFF)</u>

82.  Plaintiff hereby incorporates the preceding averments as though set forth herein.

83.  The Defendants have set out on a course of conduct which is outrageous and against the norms of society.

84.  By virtue of all the conduct described herein in this Complaint, the Defendants have intentionally inflicted emotional distress upon Plaintiff.

85.  As a direct result of the foregoing, Plaintiff has been forced to spend an inordinate amount of time in the mortgage foreclosure process trying to undo what the Defendants have created and has experienced severe emotional distress, including but not limited to the following:

        (A)  Suicidal Thoughts
        (B)  Nausea and Vomiting
        (C)  Insomnia
        (D)  Boil Eruptions
        (E)  Paranoia
        (F)  Agitation
        (G)  Swelling and Inflamation of Parts of Her Body
        (H)  Embarrassment and Humiliation
        (I)  Fear of Bodily Harm
        (J)  Physical and Mental Pain and Anguish.

and has been forced to retain counsel and incur litigation costs as well.

WHEREFORE, Plaintiff respectfully requests that the Court award her compensatory damages, punitive damages, reimbursement of counsel fees and litigation costs and such other relief as the Court deems appropriate.

COUNT X:   VIOLATION OF DUE PROCESS: SECTION 1983 CLAIM AGAINST SHERIFF ONLY

86.  Plaintiff hereby incorporates the preceding averments as though set forth herein.

87.  The Sheriff is a state actor for purposes of Section 1983.

88.  The Sheriff must administer procedures for Sheriff sales in a fashion that protects the due process rights of those whose homes will be sold.

89.  The Sheriff's responsibilities include ensuring that notice is properly given to debtors and filed with the Sheriff's Office before a creditor may schedule a sale.

90.  As described herein, Defendants Wachovia and the McCabe Firm Defendants did not provide the proper notice as required by Rule 3129 to the Sheriff's Office before the sale took place.

91.  Despite the fact that proper notice was not given, the Sheriff's Office intentionally and/or recklessly permitted the sale to go forward without proper notice being given.

92.  As a direct result of the foregoing, Plaintiff has been deprived of the use and ownership rights including title to her property; has experienced severe emotional distress, including but not limited to the following:

    (A)  Suicidal Thoughts
    (B)  Nausea and Vomiting
    (C)  Insomnia
    (D)  Boil Eruptions

(E)   Paranoia
(F)   Agitation
(G)   Swelling and Inflamation of Parts of Her Body
(H)   Embarrassment and Humiliation
(I)   Fear of Bodily Harm
(J)   Physical and Mental Pain and Anguish

and has been forced to retain counsel and incur litigation costs as well.

93.   Despite written requests to do so, the Sheriff has also refused to provide public records related to the sale transaction to counsel for Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court award her compensatory damages, punitive damages, reimbursement of counsel fees and litigation costs and such other relief as the Court deems appropriate.

COUNT XI - VIOLATION OF THE FAIR CREDIT REPORTING ACT
            (AGAINST WACHOVIA)

94.   Plaintiff incorporates the preceding averments as though set forth herein.

95.   At all times pertinent hereto, Plaintiff was a "person" as that term is defined by 15 U.S.C. §1681a(b).

96.   Said defendant violated 15 U.S.C. §1681 et seq. by engaging in the following conduct:

(A)   willfully and negligently failing to review all relevant information concerning Plaintiff's mortgage loan account;

(B)   willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff has since disputed;

(C)   willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(D)   willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

(E)   willfully and negligently failing to properly
participate, investigate and comply with the
reinvestigations that were conducted by any
and all credit reporting agencies concerning
the inaccurate information disputed by
Plaintiff.

(F)   willfully and negligently failing to provide
any and all credit reporting agencies with
the factual information and evidence that
Plaintiff submitted to Defendants and which
provided that the information concerning the
Plaintiff's credit reports was inaccurate.

(G)   willfully and negligently continuing to
furnish and disseminate inaccurate and
derogatory credit, account and other
information concerning the Plaintiff to
credit reporting agencies and other entities;
and

(H)   willfully and negligently failing to comply
with the requirements imposed on furnishers
of information pursuant to 15 U.S.C. §1681s-
2(b).

97.   Defendant's conduct was a direct and proximate
cause, as well as a substantial factor, in causing the
serious injuries, damages and harm to the Plaintiff that are
outlined more fully above, and as a result, Defendant is
liable to compensate Plaintiff for the full amount of
statutory, actual and punitive damages, along with
attorneys' fees and costs, as well as such other relief,
permitted by law.

WHEREFORE, Plaintiff respectfully requests that the
Court award her statutory damages, compensatory damages,
punitive damages, reimbursement of counsel fees and
litigation costs and such other relief as the Court deems
appropriate.

COUNT XII - <u>DEFAMATION (AGAINST ALL DEFENDANTS OTHER THAN</u>
<u>THE SHERIFF)</u>

98.  Plaintiff hereby incorporates the preceding averments as though set forth herein.

99.  At all times pertinent hereto, defendants Wachovia and the McCabe Firm Defendants had published statements both orally and through writing and had caused other entities to publish statements both orally and through writing to the general public, various courts, sheriff's department, credit reporting agencies, collection agencies and/or attorneys that are false and negative representations concerning Plaintiff's credit information and history, including but not limited to, instituting an improper foreclosure action and proceeding with Sheriff's sale in amounts that were false, inflated and misleading.

100.  The statements made by Defendants are false as outlined above.

101.  Defendants Wachovia and the McCabe Firm Defendants have published these statements to at least three credit reporting agencies, to wit: Trans Union, Experian and Equifax.  These defendants have also published these statements to the Prothonotary of the Court of Common Pleas of Philadelphia County and the Superior Court of Pennsylvania.  In publishing these statements to the Sheriff of the City of Philadelphia, it is also believed and averred that said Sheriff would have had these statements republished in newspapers and orated these statements to the general public.

102.   Defendants knew that the statements were false
when made and had no factual basis for making the
statements, as Plaintiff had notified them that the
statements were false for the above-mentioned reasons and,
nonetheless, they continue to publish such statements up
through the present time.

103.   The written statements and publications
constitute libel per se.

104.   The oral statements and publications constitute
slander per se.

105.   The actions of Defendants were a direct and
proximate cause, as well as a substantial factor, in
bringing about the serious injuries, damages and harm to
Plaintiff that are outlined more fully above and, as a
result, Defendants are liable to compensate Plaintiff for
the full amount of compensatory and punitive damages, as
well as such other relief, permitted by law.

WHEREFORE, Plaintiff respectfully requests that the
Court award her compensatory damages, punitive damages,
reimbursement of counsel fees and litigation costs and such
other relief as the Court deems appropriate.

COUNT XIII - <u>NEGLIGENCE (AGAINST ALL DEFENDANTS OTHER THAN
          THE SHERIFF)</u>

106.   Plaintiff hereby incorporates the preceding
averments as though set forth herein.

107.  Defendants' negligence consists of violating the various statutes as stated above.

108.  As a direct result of the foregoing, Plaintiff has been deprived of the use and ownership rights including title to her property; has experienced severe emotional distress, including but not limited to the following:

(A)  Suicidal Thoughts
(B)  Nausea and Vomiting
(C)  Insomnia
(D)  Boil Eruptions
(E)  Paranoia
(F)  Agitation
(G)  Swelling and Inflamation of Parts of Her Body
(H)  Embarrassment and Humiliation
(I)  Fear of Bodily Harm
(J)  Physical and Mental Pain and Anguish

and has been forced to retain counsel and incur litigation costs as well.

109. The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual and compensatory damages, as well as such other relief, permitted under the law.

WHEREFORE, Plaintiff respectfully requests that the Court award her compensatory damages, punitive damages, reimbursement of counsel fees and litigation costs and such other relief as the Court deems appropriate.

COUNT XIV - <u>INVASION OF PRIVACY/FALSE LIGHT (AGAINST ALL DEFENDANTS OTHER THAN THE SHERIFF)</u>

110.  Plaintiff hereby incorporates the preceding averments as though set forth herein.

111.  Defendants' above actions violated Plaintiff's right to privacy by impermissibly accessing plaintiff's most private information and placing the Plaintiff in a false light before the eyes of others, including potential credit grantors and creditors as well as family, friends and the general public.

112.  By such unauthorized invasion, publication and circulation of Plaintiff's name and the inaccurate information, Defendants invaded Plaintiff's right to privacy, subjected Plaintiff to ridicule and contempt, injured Plaintiff's high standing, reputation and good name among family, friends, neighbors and business associates, destroyed Plaintiff's peace of mind, and caused Plaintiff severe mental and emotional distress, including but not limited to the following:

    (A)  Suicidal Thoughts
    (B)  Nausea and Vomiting
    (C)  Insomnia
    (D)  Boil Eruptions
    (E)  Paranoia
    (F)  Agitation
    (G)  Swelling and Inflamation of Parts of Her Body
    (H)  Embarrassment and Humiliation
    (I)  Fear of Bodily Harm
    (J)  Physical and Mental Pain and Anguish.

and has been forced to retain counsel and incur litigation costs as well.

-32-

113. The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual and compensatory damages, as well as such other relief, permitted under the law.

WHEREFORE, Plaintiff respectfully requests that the Court award her compensatory damages, punitive damages, reimbursement of counsel fees and litigation costs and such other relief as the Court deems appropriate.


COUNT XV – INJUNCTIVE RELIEF – VIOLATION OF MORTGAGE BANKERS AND BROKERS AND CONSUMER EQUITY PROTECTION ACT, 63 P.S. §456.101, ET SEQ.

114. Plaintiff hereby incorporates the preceding averments as though set forth herein.

115. The actions of all defendants are violations of Mortgage Bankers and Brokers and Consumer Equity Protection Act, 63 P.S. §456.101, et seq.

WHEREFORE, based upon the facts set forth in this Complaint, Plaintiff requests the injunctive relief of the Court in ordering the following:

(A) That all defendants and their employees, at their own cost, arrange for the production of a seminar instructive of the proper mortgage foreclosure procedure and laws in Pennsylvania;

(B) That all defendants and their employees, at their own costs, attend said seminar, to be conducted by a qualified instructor of this Court's choosing, relative to mortgage foreclosure procedures and laws relating to same as enacted in Pennsylvania;

(C)   That said seminar put special emphasis on those
      procedures and laws in place for the benefit of
      low income residents of Pennsylvania.


                          _____
                          ARNOLD MACHLES, ESQUIRE
                          I.D. #03039
                          Suite 510
                          555 East City Avenue
                          Bala Cynwyd, PA 19004
                          Email arnold.machles@verizon.net
                          (610) 667-0555
                          (610) 667-8440 (FAX)


                          _____
                          JEFFREY B. FIRST, ESQUIRE
                          Attorneys for Plaintiff
                          I.D. #54198
                          Suite 510
                          555 East City Avenue
                          Bala Cynwyd, PA 19004
                          Email jfirstlaw@aol.com
                          (610) 660-9740
                          (610) 660-9741 (FAX)